IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
Newark Vicinage

| | | |
|---|---|---|
| PHILADELPHIA CONTRIBUTIONSHIP INSURANCE COMPANY a/s/o BLANCA LEON, GARY & MAY NICHOL, and GARY NICHOL | : : : : | |
| | : | CIVIL ACTION NO.:2:20-CV-14018 |
| Plaintiff, | : : : | |
| v. | : : | |
| AMERICAN SECURITY INSURANCE COMPANY and JOHN DOES 1-5 and ABC COMPANIES 1-5, | : : : | |
| Defendants. | | |

**PLAINTIFF, PCIC'S BRIEF IN SUPPORT OF ITS OPPOSITITION TO AMERICAN SECURITY INSURANCE COMPANY'S MOTION TO DISMISS**

Plaintiff, Philadelphia Contributionship Insurance Company ("PCIC"), as subrogee of Blanca Leon, Gary and May Nichol, and Gary Nichol, hereby presents their Brief in Support of their Opposition to the Motion to Dismiss of Defendant, American Security Insurance Company ("American Security"). For the reasons that follow, the motion should be denied.

On the Brief:

CRAWFORD LAW

By: *s/John R. Slattery*
JOHN R. SLATTERY, ESQUIRE
Attorney for plaintiff, Philadelphia
Contributionship Insurance Company

Dated:   January 5, 2021

## Table of Authorities

**Federal Cases**

                                                          Page(s)

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) .................................................................. 7

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007 .................................... 7, 8, 14

*Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*,
   296 F.3d 164, 173 (3d Cir. 2002) ................................................................................ 8

*Foglia v. Renal Ventures Mgmt., LLC*,
   754 F.3d 153 (3d Cir. 2014) ........................................................................................ 7

*Mayer v. Belichick*,
   605 F.3d 223 (3d Cir. 2010) ........................................................................................ 7

*Seville Indus. Mach. Corp. v. Southmost Mach.*
   742 F.2d 786, 791 (3d Cir. 1984) ................................................................................ 8, 16

*Travelers Prop. & Cas. Corp. v. GE*,
   150 F. Supp. 2d 360, 2001 U.S. Dist. LEXIS 1439557 ................................................ 11

*Naporano Iron & Metal Co. v. Amer. Crane Corp.*,
   79 F. Supp. 2d 494, 511 (D.N.J. 1999) ........................................................................ 8

**State Cases**

*Cockerline v. Menendez*,
   411 N.J. Super. 596, 988 A.2d 575 (App.Div.2010) .................................................... 9

*Fernandes v. DAR Dev. Corp.*,
   222 N.J. 390, 119 A.3d 878 (2015) ............................................................................. 9

*Gilleski v. Cmty. Med. Ctr.*,
   336 N.J. Super. 646, 765 A.2d 1103 (N.J. Super. App. Div. 2001) .............................. 10

*Hirsch,v. Gen. Motors Corp.*
   266 N.J. Super. 222, 234, 628 A.2d 1108 (Law Div. 1993) ......................................... 9, 10

*Rosenblit v. Zimmerman*,
   166 N.J. 391, 401-403, 766 A.2d 749 (2001) .............................................................. 12, 15, 16

*Swick v. The New York Times Co.*
   357 N.J. Super. 371, 378, 815 A.2d 508, 512 (N.J. Super. App. Div. 2003) ................. 10, 11

*Walker Rogge, Inc. v. Chelsea Title & Guaranty Co.*,
   116 N.J. 517, 562 A.2d 208 (1989) ............................................................................. 12

**Rules**

Fed. R. Civ. P. 9(b) ............................................................................................................. 8, 15

Fed. R. Civ. P. 12)b)(6)) ........................................................................................................ 7

**Other**

*National Fire Protection Association 921 Guide for Fire and Explosion Investigations* (2017),

    3.3.118 .................................................................................................................................. 4

    12.3.1 .................................................................................................................................... 4

    12.3.3.1 ................................................................................................................................. 4

I.  **INTRODUCTION**

This subrogation action arises out of a November 21, 2017 fire that occurred at 11 Ridgely Place, Weehawken, New Jersey ("11 Ridgely"). The fire spread to neighboring properties, three of which were insured by PCIC. After the fire, American Security denied PCIC's fire origin and cause investigators' requests for access to the fire scene. In doing so, American Security prevented PCIC from its ability to pursue a subrogation claim against the individuals and/or entities that were responsible for causing the fire or allowing it to spread to PCIC's insureds' properties. By denying PCIC access to the evidence, American Security opened itself up to PCIC's claims for negligence and fraudulent concealment. PCIC's Amended Complaint contains sufficient allegations on which to base its claims. As a result, American Security's Motion to Dismiss should be denied.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

On November 21, 2017, a fire that occurred at 11 Ridgely. (ECF 6, ¶ 4). The fire spread from 11 Ridgely and caused damage to neighboring properties, including Nine Ridgely Place, Weehawken, NJ 07086, owned by Blanca Leon; Seven Ridgely Place, Weehawken, NJ 07086, owned by Gary and May Nichol; and Five Ridgely Place Front, Weehawken, NJ 07086, owned by Gary Nichol. (Id. at ¶ 5). These neighboring properties were insured by PCIC. (Id. at ¶ 1). American Security provided insurance for the mortgagee of 11 Ridgely. (Id. at ¶ 6).

After the fire, PCIC retained J. F. Goetz and Associates to conduct a fire origin and cause investigation. (Id. at ¶ 9). On November 24, 2017, John F. Goetz attempted to gain access 11 Ridgely to conduct his origin and cause investigation on behalf of PCIC. (Id. at ¶ 10). As an insurer of properties that were damaged by the subject fire, PCIC is an Interested Party, as

4

defined by National Fire Protection Association ("NFPA") 921 Guide for Fire and Explosion Investigations (2017), which provides the following definition:

> 3.3.118 Interested Party. Any person, entity, or organization including their representatives, with statutory obligations or whose legal rights or interest may be affected by the investigation of a specific incident.

(Id. at ¶ 8). On November 24, 2017, of J. F. Goetz and Associates had not yet received consensual authority pursuant to NFPA 921 12.3.1 and 12.3.3.1 to access 11 Ridgely. (Id. at ¶ 11). That same day, Mr. Goetz placed a placard on the door to 11 Ridgely. (Id. at ¶ 12). The placard stated—in both English and Spanish—that 11 Ridgely was evidence, that the evidence was not to be disturbed, and that Mr. Goetz should be contacted. (Id. at ¶ 13).

As an insurer of 11 Ridgely, American Security was one of the individuals and/or entities that had authority to grant access to 11 Ridgely after the fire. (Id. at ¶ 7). On November 30, 2017, Mr. Goetz contacted Mr. Terry Shaffer, a Property & Casualty Claims Adjuster working on behalf of American Security, to request consensual authority pursuant to NFPA 921 12.3.1[1] and 12.3.3.1[2] to investigate the cause of the fire at 11 Ridgely. (Id. at ¶ 11, 14).

---

[1] NFPA 921 Section 12.3.1 (Authority to Conduct the Investigation) provides:

> The investigator should ascertain the basis and extent of his or her authority to conduct the investigation. The authority to investigate is given to police officers, fire fighters, and fire marshals according to the law of the jurisdiction. Private fire investigators receive their authority by contract or consent. Examples of contract consent are insurance contracts that obligate the insured to cooperate in the investigation. Also, a person having an interest in the property may retain (contract with) their own fire investigator. Consensual authority would include an investigator for another interested party being invited onto the premises to participate or observe the scene investigation. Proper identification of the basis of authority will assist the investigator in complying with applicable legal requirements and limitations. The scope of authority granted to investigators from the public or governmental sector is usually specified within the codified laws of each jurisdiction, as supplemented by applicable local, agency, and department rules and regulations. Many states and local jurisdictions (i.e., cities, towns, or counties) have licensing or certification requirements for investigators. If such requirements are not followed, the results of the investigation may not be admissible and the investigator may face sanctions.

(ECF 5, Exhibit 1).

[2] NFPA 921 Section 12.3.3.1 (Consent) provides:

On November 30, 2017, Mr. Shaffer stated that as soon as the independent adjuster handling the claim for American Security contacted him about the status of the property, Mr. Shaffer would contact Mr. Goetz to arrange for access to the building. (Id. at ¶ 15). On December 6, 2017, Gerry Piotrowicz, an origin and cause investigator for J. F. Goetz and Associates, contacted Mr. Shaffer to arrange for access to 11 Ridgely. (Id. at ¶ 16). Mr. Shaffer advised Mr. Piotrowicz that the American Security policy was a lender-placed policy with no liability coverage. (Id. at ¶ 17). At that time, Mr. Shaffer also advised Mr. Piotrowicz that American Security was not retaining an origin and cause investigator to investigate the cause of the fire and that they would not provide consensual authority to J.F. Goetz & Associates to access 11 Ridgely. (Id. at ¶ 18-19). Denying PCIC's origin and cause investigators from accessing 11 Ridgely prevented PCIC from determining the cause of the fire and pursuing a subrogation action against individuals and/or entities responsible for causing and/or allowing the fire to spread to properties insured by PCIC. (Id. at ¶ 20).

As a result of the fire, PCIC's insureds submitted first-party insurance claims to compensate them for property damage, loss of use, and other items covered under their policies of insurance with PCIC. (Id. at ¶ 21, 23, and 25). PCIC made payments of $502,661.35 to Blanca Leon, $498,058.53 to Gary and May Nichol, and $14,705.00 to Gary Nichol for the damage resulting from the fire. (Id. at ¶ 22, 24, and 26). As a result of the payments made to its insureds, PCIC is subrogated to the rights of its insureds and seeks to recover money damages

---

The person in lawful control of the property can grant the investigator permission or consent to enter and remain on the property. This is a voluntary act on the part of the responsible person and can be withdrawn at any time by that person. When consent is granted, the investigator should document it. One effective method is to have the person in lawful control sign a written consent form. The investigator may choose to make inquiries to ensure that the person giving consent has lawful control of the property. For example, if a tenant has rights to control the leased property under a rental agreement, the property owner (landlord) may not have the immediate right to access that property and may therefore lack the power to consent.

from those individuals and/or entities responsible for causing and/or allowing the November 21, 2017 fire that originated at 11 Ridgely to spread to properties PCIC insured defendant and from American Security, for American Security's negligence and fraudulent concealment of evidence. (Id. at ¶ 27-28).

Plaintiff filed its Complaint in state court on September 1, 2020. (ECF 1-1). American Security removed the Complaint on October 7, 2020. (ECF 1). Thereafter, American Security filed a Motion to Dismiss Plaintiff's Complaint (ECF 5). In response, Plaintiff filed its Amended Complaint. (ECF 6). Presently before the Court is American Security's Motion to Dismiss. (ECF 9).

## II. LEGAL ARGUMENT

### A. Standard of Review

In ruling on a motion to dismiss under Rule 12(b)(6), the Court is "required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the nonmovant." Foglia v. Renal Ventures Mgmt., LLC, 754 F.3d 153, 154 n.1 (3d Cir. 2014) (quotation marks and citation omitted). Further, a court must consider only "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Once a claim has been stated adequately, it may be supported by showing "any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 546.

Courts weighing a motion to dismiss asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Twombly, 550 U.S. at 563.

Rule 9(b) sets forth a heightened pleading standard for fraud claims. "[T]he requirements of rule 9(b) may be satisfied if the complaint describes the circumstances of the alleged fraud with precise allegations of date, time, or place or by using some means of injecting precision and some measure of substantiation into their allegations of fraud." Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 173 (3d Cir. 2002) (citing Naporano Iron & Metal Co. v. Amer. Crane Corp., 79 F. Supp. 2d 494, 511 (D.N.J. 1999). Rule 9(b)'s heightened pleading standard for fraud claims is meant "to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." Seville Indus. Mach. Corp. v. Southmost Mach., 742 F.2d 786, 791 (3d Cir. 1984). However, "[m]alice, intent, knowledge, and other condition of mind of a person may be alleged generally." Fed. R. Civ. P. 9(b).

> **B. Having been placed on notice that the fire scene was evidence that PCIC's fire investigators requested to inspect, American Security owed a duty to PCIC to preserve and allow PCIC's representatives to inspect the fire scene; failing to do so exposes American Security to liability for PCIC's claims of negligence and fraudulent concealment.**

PCIC's claims arise out of American Security's decision to deny PCIC's investigators access to the fire scene at 11 Ridgley. The Amended Complaint asserts two causes of action: negligence and fraudulent concealment. As discussed more fully below, the Amended Complaint sets forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on

its face." Iqbal, supra, 129 S. Ct. at 1949. Accordingly, American Security's Motion to Dismiss should be denied.

### 1. PCIC's negligence claim

To sufficiently plead the elements of a negligence claim under New Jersey law, the pleading requires that: 1) defendant owed a duty of care, 2) defendant breached that duty, 3) actual and proximate causation, and 4) damages. See Fernandes v. DAR Dev. Corp., 222 N.J. 390, 404, 119 A.3d 878 (2015).

### *Duty to PCIC*

Here, PCIC has alleged sufficient factual matters to establish the elements of its negligence claim and to survive a motion to dismiss. First, PCIC alleges in the Amended Complaint that "American Security had a duty to preserve evidence at 11 Ridgely and allow all Interested Parties, as defined by NFPA 921 3.3.118 (2017), including representatives of PCIC, to investigate the origin and cause of the fire." (ECF 6, ¶ 33).

"Spoliation of evidence in a prospective civil action occurs when evidence pertinent to the action is destroyed, thereby interfering with the action's proper administration and disposition." Cockerline v. Menendez, 411 N.J. Super. 596, 620, 988 A.2d 575 (App.Div.2010) (quoting Aetna Life & Cas. Co. v. Imet Mason Contractors, 309 N.J. Super. 358, 364, 707 A.2d 180 (App.Div.1998) and Hirsch v. Gen. Motors Corp., 266 N.J. Super. 222, 234, 628 A.2d 1108 (Law Div.1993)). A duty to preserve evidence arises when the alleged spoliating party has knowledge of pending or likely litigation, the evidence is relevant to the litigation, and the foreseeability that the opposing party would be prejudiced by the destruction or disposal of this evidence. Cockerline, 411 N.J. Super. 596, 620 (citing Aetna Life, 309 N.J. Super. at 366, 707

A.2d 180 and Hirsch, supra, 266 N.J. Super. at 250-51, 628 A.2d 1108). The most important factor was the foreseeability of harm to the plaintiff. Hirsch, 266 N.J. Super. at 249.

New Jersey's Appellate Division has held that a duty to preserve evidence may be created when a "plaintiff makes a specific request to the third party to preserve a particular item." Swick v. The New York Times Co., 357 N.J. Super. 371, 378, 815 A.2d 508, 512 (N.J. Super. App. Div. 2003) (citing Gilleski v. Cmty. Med. Ctr., 336 N.J. Super. 646, 765 A.2d 1103 (N.J. Super. App. Div. 2001)).

Here, American Security had a duty to preserve evidence and permit PCIC to investigate the origin and cause of the fire. Having insured three neighboring properties that sustained property damage from the fire that originated at 11 Ridgely, PCIC met the definition of an "Interested Party" as provided in NFPA 921 Section 3.3.118 (Interested Party) provides the following definition:

> Any person, entity, or organization including their representatives, with statutory obligations or whose legal rights or interest may be affected by the investigation of a specific incident.

(ECF 6, ¶ 8; see also ECF 9 at Ex. 1).

In order to inspect the evidence relevant to the fire's origin and cause, PCIC's investigators were required by NFPA 921 to obtain consensual authority to have access to the fire scene. See NFPA 921 Section 12.3.1 (Authority to Conduct the Investigation). (See fn 1, supra). On November 24, 2017, J. F. Goetz and Associates placed a placard on the door to 11 Ridgely. (Id. at ¶ 12). The placard stated—in both English and Spanish—that 11 Ridgely was evidence, that the evidence was not to be disturbed, and that Mr. Goetz should be contacted. (Id. at ¶ 13). Less than a week later, Mr. Goetz had a telephone conversation with Mr. Terry Shaffer,

a Property & Casualty Claims Adjuster working on behalf of American Security. The purpose of the call was for Mr. Goetz to obtain authority to access the property.

At this point, there is no question that American Security was on notice of PCIC's interest in examining evidence at the fire scene having received a specific request from PCIC. Swick, 357 N.J. Super. at 378. It is reasonable to infer that American Security, a major insurance carrier, would know that it would be foreseeable that litigation could arise after a significant fire event results in insurance claims in excess of $1 million. Likewise, American Security knew or should have known that the fire scene would be critically relevant to subsequent litigation and preventing an Interested Party's access to the fire scene before it is overhauled would be extremely prejudicial to PCIC in this instance. These allegations, together with all reasonable references in its favor, establish that American Security had a duty to preserve the fire scene for PCIC's inspection.

American Security argues that PCIC relies only upon NFPA 921 to establish the duties owed to actors involved in a fire investigation, and that the guide does not establish a duty. PCIC has established, supra, that the legal obligation arises out of American Security's duty to preserve and permit access to evidence. Notwithstanding the legal duty imposed on it under the law, American Security attempts to argue that because NFPA 921's consent provision is voluntary, that there is no duty. As an initial matter, NFPA 921 is an authoritative source and a "peer reviewed and generally accepted standard in the fire investigation community." Travelers Prop. & Cas. Corp. v. GE, 150 F. Supp. 2d 360, 366, 2001 U.S. Dist. LEXIS 14395, 57 Fed. R. Evid. Serv. (Callaghan) 695, CCH Prod. Liab. Rep. P16,181. While it is true that whether to provide consent to a private fire investigator is voluntary act under NFPA 921, that does not mean that denying access to an investigator comes without consequences. By failing to allow PCIC access

to the fire scene, American Security opened itself to the causes of action contained in the Amended Complaint.

The law imposes legal consequences on spoliators of evidence, and American Security should have to answer for its actions in preventing PCIC's investigators to access the fire scene—evidence that PCIC would use to establish a viable subrogation claim against a responsible third party. There are generally three civil remedies for spoliation of evidence: (1) an adverse inference against the spoliator; (2) a discovery sanction; are (3) separate tort action against the spoliator. Rosenblit v. Zimmerman, 166 N.J. 391, 401-403, 766 A.2d 749, 754, 755 (2001). With respect to the first two remedies, underlying litigation is necessary to impose a spoliation inference or sanction. One would be unable to bring a civil action if every carrier that insured a property where a fire originated and then spread to other properties denied fire scene access to Interested Parties. In those cases, the rights of Interested Parties would be trampled, and they would never be able to find out the cause of the fire and seek redress from those responsible for causing the fire.

### *American Security Assumed the Duty to PCIC*

Even assuming, *arguendo*, that American Security did not have a duty to preserve and allow PCIC's investigators access to the fire scene, a point that PCIC does not concede, American Security assumed the duty by engaging with PCIC's investigators on behalf of its insureds on the issue of whether PCIC's representatives could conduct a fire scene investigation at 11 Ridgley. Courts have long held that when one assumes a duty, that actor can be held liable in negligence. See Walker Rogge, Inc. v. Chelsea Title & Guaranty Co., 116 N.J. 517, 535, 562 A.2d 208 (1989) (title insurer could be liable in negligence for duties assumed by the insurer in addition to the contract to insure title).

On November 30, 2017, Mr. Shaffer stated that as soon as the independent adjuster handling the claim for American Security contacted him about the status of the property, Mr. Shaffer would contact Mr. Goetz to arrange for access to the building. (ECF 6 at ¶ 15). The following week, PCIC's investigator followed up with Mr. Shaffer, who advised that PCIC's investigators would not be given access to the fire scene. (Id., ¶ 16, 19).

When asked to grant access to the property, at any point in time, American Security did not state that it did not possess authority, as insurer of the lender and the owner of the property, to give permission. American Security did not instruct PCIC's investigators to seek consent from American Security's insureds. Instead, American Security initially stated that they needed to obtain information from the independent adjuster before scheduling an inspection. After doing so, American Security exercised its authority as gatekeeper to 11 Ridgely and denied PCIC's investigators access to the fire scene. By way of its own actions, as alleged in the Amended Complaint, American Security demonstrated that it had authority and control over the property to grant the access to the fire scene.

### *Lack of Liability Coverage*

American Security contends that there is no duty to PCIC because its policy did not provide liability coverage. It matters not whether the American Security policy had liability coverage. PCIC's claims are not third-party claims against American Security's insureds. To the contrary, they are direct claims for negligence and fraudulent concealment arising from American Security's own actions. The fact that its policy with its insureds did not have liability coverage is immaterial to PCIC's claims. That American Security would have had no legal or financial exposure to PCIC had PCIC's investigators been given access to the fire scene makes American Security's decision to deny PCIC access to the property even more baffling. If

permitted to conduct a fire scene investigation, PCIC could have followed the evidence and, depending on the results of its investigation, sought a recovery against, *e.g.*, a negligent contractor, a product manufacturer, a utility, or other responsible party. However, by taking affirmative steps to block PCIC's access to the evidence, American Security opened itself up to legal liability for its negligence and fraudulent concealment.

### *Remaining Elements of Negligence*

PCIC can satisfy the remaining elements for its negligence claim. It is important to note that PCIC need not demonstrate that it "will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Twombly, supra 550 U.S. at 563. Having established sufficient facts that establish the existence of American Security's duty, PCIC may likewise show that American Security breached its duty. PCIC's Amended Complaint alleges that American Security breached its duty by denying PCIC's origin and cause investigators from access to the critical evidence to support a subrogation claim: the fire scene. (ECF 6, ¶ 34). Finally, the third and fourth elements are also satisfied. Taking all reasonable inference in its favor, PCIC has alleged sufficient facts that show that the element of actual and proximate causation and damages. (Id. at ¶¶ 20-27, 35-37).

### 2. **Fraudulent Concealment**

PCIC has also brought a claim against American Security for the tort of fraudulent concealment. To prevail on a claim for fraudulent concealment under New Jersey law, a plaintiff must establish five elements:

> (1) The defendant had a legal obligation to disclose evidence in connection with an existing or pending litigation;
> (2) the evidence was material to the litigation;
> (3) the plaintiff could not reasonably have obtained access to the evidence from another source;

  (4) the defendant intentionally withheld, altered, or destroyed the evidence with purpose to disrupt the litigation; and

  (5) the plaintiff was damaged in the underlying action by having to rely on an evidential record that did not contain the evidence defendant concealed.

Rosenblit v. Zimmerman, 166 N.J. 391, 406-07, 766 A.2d 749 (2001). Here, the Amended Complaint sets forth sufficient facts to dispose of American Security's Motion to dismiss. (ECF 6, ¶¶ 39-45).

  With respect to the first element, PCIC has established that American Security had a legal obligation to preserve and provide access to the evidence at the fire scene at 11 Ridgely. See duty discussion, supra. The fire scene would have contained the most important evidence for PCIC's fire investigators to examine; thus, the evidence was material to the pending litigation and satisfies the second element. Third, PCIC could not have reasonably obtained access to the evidence from another source.[3] To this point, PCIC specifically alleges that the North Hudson Regional Fire and Rescue's Incident Detail Report listed the cause of the fire as "Undetermined." (ECF 6, ¶ 43). As such, PCIC could not rely on the cause determination of the public authorities who had access to the fire scene to establish liability for causing the fire or allowing it to spread to PCIC's insureds' properties. With respect to the fourth element, PCIC may allege intent, knowledge, and other condition of mind of a person generally. Fed. R. Civ. P. 9(b). The reasons for American Security's decision should be explored and developed during discovery. Finally, with respect to the fifth factor, there is no question that PCIC was damaged, as the denial of access to the evidence effectively killed any prospects for a subrogation claim.

---

[3] While not alleged in the Amended Complaint, PCIC's origin and cause investigators did obtain the name and telephone number of the owner of 11 Ridgely; however, multiple calls to that number went unreturned. If the Court's determination on this motion turns on whether this fact is alleged in the Amended Complaint, then PCIC would respectfully request leave to amend its pleading. However, it is PCIC's position that the instant motion should be denied, and PCIC should be given the opportunity during discovery to further develop facts regarding PCIC's efforts to obtain permission to access the fire scene.

American Security argues that PCIC has not sufficiently alleged the "who, what, when, where, and how elements to state a claim arising in fraud." (ECF 9, Def. Br. at p. 13). PCIC disagrees. The Amended Complaint meets the heightened pleading standard of Rule 9(b). Moreover, there are certainly factual allegations to place American Security on notice of the precise misconduct with which it is charged. Southmost Mach., supra 742 F.2d at 791. The allegations specifically identify the American Security employee (who), the denial of access to the evidence at the fire scene (what), the dates of the fire and the communications between PCIC and American Security's representative (when), the fire at 11 Ridgley (where), and alleges that American Security's claims adjuster denied PCIC permission to go on the property to conduct a fire scene inspection (how). The allegations are not spurious and specious charges; they are specific. And they more than satisfy the purpose of placing American Security on notice of its misconduct, which "cannot go undeterred and unpunished and those aggrieved by it should be made whole with compensatory damages." Rosenblit, 166 N.J. 391 at 758. Accordingly, the motion to dismiss should be denied.

III. CONCLUSION:

For the foregoing reasons, Philadelphia Contributionship Insurance Company, as subrogee of Blanca Leon, Gary and May Nichol, and Gary Nichol, respectfully requests that this Honorable Court deny American Security Insurance Company's Motion to Dismiss.

                                        CRAWFORD LAW

                                  BY: *s/ JOHN R. SLATTERY*
                                           JOHN R. SLATTERY
                                           Attorney for Plaintiff

DATED: January 5, 2021